# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number:  **14-07162-jw**

## ORDER OVERRULING OBJECTION TO CONFIRMATION

The relief set forth on the following pages, for a total of 10 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**03/11/2015**



John E Waites

US Bankruptcy Judge
District of South Carolina

Entered: 03/11/2015

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:

Kristopher Allen Jarreau and Diana Lynn
Ellison,

Debtor(s).

C/A No. 14-07162-JW

Chapter 13

**ORDER**

This matter comes before the Court for confirmation of the Chapter 13 Plan filed by Kristopher Allen Jarreau and Diana Lynn Ellison (collectively, "Debtors"). South Carolina National Guard Federal Credit Union ("Credit Union") objects to confirmation on the grounds that the Plan attempts to value Credit Union's secured claim in violation of the hanging paragraph of 11 U.S.C. § 1325(a)(*). Based upon the pleadings and the arguments and evidence presented by the parties at the hearing, the Court makes the following findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).[1]

## FINDINGS OF FACT

1.      In May of 2013, Diana Lynn Ellison ("Ellison") purchased a 2013 Toyota Camry ("Vehicle") from Toyota Center in West Columbia in order to replace her previous vehicle, a Jeep Commander, which had been destroyed. The purchase of the Vehicle was financed through a loan from Southeast Toyota Finance in the amount of $30,550.00 plus 15.24% interest, and the Vehicle was titled in Ellison's name only.

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of fact, they are likewise so adopted.

2.      At the time of the Vehicle's purchase, Ellison's husband, Kristopher Allen Jarreau ("Jarreau"), drove a Toyota Corolla as his primary means of transportation.  The Corolla was later stolen and Jarreau purchased a Dodge Avenger as his replacement vehicle.  Since its purchase, the Dodge Avenger has served as Jarreau's primary means of transportation.

3.      On June 24, 2013, in order to reduce the interest rate and monthly payment on the loan for the Vehicle, Debtors obtained a loan from Credit Union in the amount of $30,957.70 plus 3.99% interest, and Credit Union paid Southeast Toyota Finance's loan in full.  As a member of the National Guard, only Ellison was eligible for a loan from Credit Union.  Jarreau could not have individually obtained a loan from Credit Union since he is not a member of the National Guard. The loan officer recommended including Jarreau on the loan to improve Jarreau's credit score.  Debtors both signed the loan and security agreement documents.  In connection with this transaction, Jarreau was added to the Vehicle's title as a joint owner with Ellison and Credit Union was listed on the title as the first lienholder.

4.      On December 2, 2014, Jarreau was involved in an accident while driving the Vehicle to an appointment with his attorney regarding filing a bankruptcy case.  On the date of the accident, Jarreau's Dodge Avenger was being repaired.  After the accident, Jarreau checked the repairs on the Vehicle when he drove Ellison to pick up the Vehicle from the repair shop.  Ellison drove the Vehicle home from the repair shop.

5.      On December 18, 2014, Debtors jointly filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

2

6.      Debtors also filed their Chapter 13 plan ("Plan") on December 18, 2014. The Plan includes a motion to value Credit Union's lien at $16,500.00, the alleged current value of Debtors' interest in the Vehicle.   The Plan proposes to treat the remaining balance of Credit Union's claim, $10,008.00, as an unsecured claim.

7.      Credit Union timely objected to confirmation of the Plan, asserting that its proposed treatment under the Plan violated the hanging paragraph of 11 U.S.C. § 1325(a)(*) because it has a purchase money security interest, the debt owed to it was incurred within 910 days preceding the date of Debtors' filing of the petition, the debt is secured by a motor vehicle, and the Vehicle was acquired for Debtors' personal use.

8.      At the hearing, the parties stipulated that the value of the Vehicle is $17,975.00.  The Debtors presented the testimony of Jarreau, who stated that the Vehicle was purchased only for Ellison's use, as he had his own vehicle.  He testified that his personal vehicle, the Dodge Avenger, is the nicer of the two vehicles, as the Vehicle has some mechanical problems.  He further testified that he has only driven the Vehicle three times.

## ISSUE

Does the hanging paragraph of 11 U.S.C. § 1325(a)(*) apply to prevent bifurcation of Credit Union's claim?

## CONCLUSIONS OF LAW

### I. 11 U.S.C. § 1325(a)(*)

The hanging paragraph of § 1325 prevents the bifurcation of certain secured claims when confirming a debtor's plan under § 1325(a)(5).  In re Price, 562 F.3d 618 (4th Cir. 2009).  It provides:

3

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a)(*).[2]

More simply stated, four requirements must be met for the hanging paragraph to apply: (1) the claim must be secured by a purchase money security interest, (2) in a motor vehicle, (3) acquired for the personal use of the debtor, and (4) incurred within 910 days before the debtor filed the petition.  See id.  In this case, the parties agree that the collateral is a motor vehicle acquired within 910 days before the Debtors filed the petition, but dispute whether the first and third requirements are met.

## II. *Does Credit Union have a Purchase Money Security Interest?*

State law governs the determination of whether Credit Union's security interest in the Vehicle is a purchase money security interest.  In re Matthews, 378 B.R. 481, 486 (Bankr. D.S.C. 2007) (citing Rosen v. Assocs. Fin. Serv. Co., 18 B.R. 723, 724 (Bankr. D.S.C. 1981), *aff'd* 17 B.R. 436 (D.S.C. 1982); In re Pajot, 371 B.R. 139, 147 (Bankr. E.D. Va. 2007)).  S.C. Code § 36-9-103(b)(1) provides that "[a] security interest in goods[3] is a purchase-money security interest . . . to the extent that the goods are purchase-money collateral with respect to that security interest." This Court has previously explained that under South Carolina law, "a security interest is purchase money if a

---

[2] Future references to the Bankruptcy Code shall be by section number only.
[3] Under S.C. Code Ann. § 36-9-102(44), "goods" are defined as "all things that are moveable when a security interest attaches;" therefore, the Vehicle falls within that definition.

debtor incurs debt to obtain certain goods and the creditor lends money to the debtor to enable the debtor to obtain those goods." <u>Matthews</u>, 378 B.R. at 486.

As to Ellison, case law in this District has established that "the refinancing of a debt extinguishes the purchase money character of the original loan, where the original loan was paid off and a new loan extended, because the proceeds of the new loan were not used to acquire rights in the collateral." <u>In re Boston</u>, C/A No. 09-09099, 2010 WL 5128960, at *2 (Bankr. D.S.C. Mar. 5, 2010) (citing <u>Dominion Bank of the Cumberland v. Nuckolls (In re Nuckolls)</u>, 780 F.2d 408, 413 (4th Cir. 1985); <u>Rosen v. Assoc. Fin. Serv. (In re Rosen)</u>, 17 B.R. 436 (D.S.C. 1982); <u>In re Connelly</u>, C/A No. 08-01715-JW, slip op. (Bankr. D.S.C. Jun. 25, 2008); <u>In re Mosely</u>, C/A No. 96-71639-JW, slip op. (Bankr. D.S.C. May 15, 1996)). Credit Union argues that it has a purchase money security interest because the refinance transaction occurred less than two months after Ellison's purchase of the Vehicle. This argument lacks merit. The purchase money character of the debt is extinguished regardless of the temporal proximity of the refinance transaction to the original transaction because a critical element—the proceeds of the loan being used to acquire rights in the collateral—is not present in a refinance transaction. Therefore, Credit Union does not have a purchase money security interest in the Vehicle with respect to Ellison.

As to Jarreau, the answer is less straightforward. While the loan extended by Credit Union to Ellison was not used by Ellison to acquire rights in the Vehicle, Jarreau both incurred a new debt obligation and obtained title to the Vehicle as a result of the transaction with the Credit Union. Since Jarreau incurred an obligation to Credit Union to acquire rights in the Vehicle in connection with the transaction, Credit Union argues

that, as to Jarreau, it has a purchase money security interest.  The Court agrees.  Credit Union lent money to Jarreau and, in return, he signed a note and security agreement, which enabled him to take a title interest in the Vehicle.  Under the circumstances of this case, the Court finds that Credit Union has a purchase money security interest as to Jarreau.

In making this determination, the Court notes that this case is distinguishable from In re Naumann, No. 09-32092, 2010 WL 2293477 (Bankr. S.D. Ill. Jun. 8, 2010), where the bankruptcy court found that a refinance transaction that added the original obligor's spouse as a co-debtor was a novation, not a renewal, and thus the creditor's purchase money status did not survive the refinancing.  Unlike the instant case, the spouse who was added as a co-debtor as part of the transaction in Naumann did not obtain title to the vehicle in connection with the refinance and the same creditor made both the original and refinanced loans.

### III. *Was Credit Union's Purchase Money Security Interest Acquired for the Personal Use of Debtor?*

Debtors argue that the hanging paragraph of 11 U.S.C. § 1325(a) does not apply because the Vehicle was not acquired for Jarreau's personal use.[4]  To determine whether a vehicle was acquired for personal use of the debtor, this Court has previously applied a "totality of the circumstances" approach.  Matthews, 378 B.R. at 489.  The debtor's intent at the time of purchase is the touchstone of the analysis.  Use is considered personal when it "satisfies personal wants (such as recreation), . . . personal needs (such as shopping or

---

[4] Ellison's status as a joint debtor would not affect the § 1325(a)(*) analysis as to Jarreau, since this Court has previously held that "while joint administration combines the estates only for administrative matters by using a single docket, it does not merge assets and liabilities" and "creditors of each debtor continue to look to that debtor for payment of their claims."  In re Brown, C/A No. 09-03846, 2009 WL 7231290 at *3 (Bankr. D.S.C. Oct. 27, 2009).

seeking medical attention or other errands), and . . . family and other personal obligations, whether legal or moral." Id. The Court considers the following factors to determine whether the debtor intended to acquire the vehicle for personal use: (1) the debtor's testimony; (2) the debtor's actual personal use of the vehicle; and (3) any designation of personal use provided by the parties' contract. Id.

   a. Debtor Jarreau's Testimony

   Jarreau testified that the Vehicle was purchased with the intent that it be utilized to meet Ellison's personal needs. He testified that Ellison drives the Vehicle daily to meet her needs and that he has only driven the Vehicle three times: on December 2, 2014 to meet with his bankruptcy lawyer when the Dodge Avenger was being serviced, on the day of the hearing on the Objection because he was not sure if he needed to bring the Vehicle for the hearing, and on one other occasion. According to Jarreau, he only uses the Dodge Avenger to meet his personal transportation needs. He further testified that when the Vehicle was refinanced, he was only added to the title and the note to improve his credit at the recommendation of the loan officer.[5] This fact, together with his access to his own vehicle for his personal use,[6] strongly supports Jarreau's testimony that the Vehicle was not purchased for his personal use, but was instead purchased for the personal use of Ellison.

   b. Jarreau's Actual Personal Use

   This Court has previously stated that "[a] debtor's actual use of a vehicle is often a reflection of the intended use of the vehicle." Matthews, 378 B.R. at 491 (citing In re Solis, 356 B.R. 398, 409 (Bankr. S.D. Tex. 2006)). Credit Union argues that evidence of

---

[5] Jarreau was not eligible to obtain a loan individually from Credit Union because he is not a member of the National Guard.
[6] No evidence regarding the titles to vehicles other than the Vehicle at issue was presented.

Jarreau's actual use of the Vehicle on a few occasions supports a finding that the purchase of the Vehicle was also intended for his personal use, specifically observing that Jarreau had been in a wreck while driving the Vehicle, had supervised the Vehicle's repair from the wreck, and had driven the Vehicle to the hearing on its Objection. However, personal use must be "significant and material" for § 1325(a)(*) to apply. See In re Brown, C/A No. 09-03846, 2009 WL 7231290 at *2 (Bankr. D.S.C. Oct. 27, 2009). The Court finds Jarreau's use of the Vehicle was de minimis. "De minimis personal use will not annul [a debtor's] intent in purchasing a vehicle for non-personal use." In re Westerfield, C/A No. 09-01637-JW, 2009 WL 4573682, at *3 (Bankr. D.S.C. Jun. 8, 2009).

    c.  Designation in the Note/Security Agreement

      The parties' loan agreement does not appear to specifically address the use of the Vehicle. The loan agreement provides that the Debtors promise to "use [their] *account* for consumer (personal, family or household) purposes," but no reference is made to any requirements for the use of the Vehicle itself. Even if this statement in the loan agreement could be construed broadly as applying to the Vehicle's use, this Court has previously held that a designation of "personal, family, or household" use in a note was not controlling, and that "personal use" is neither mutually exclusive nor wholly synonymous with "family" or "household" use. Matthews, 378 B.R. at 491 (citing Cypher Chiropractic Ctr. v. Runski (In re Runski), 102 F.3d 744, 747 (4th Cir. 1996)); see also In re Brown, 2009 WL 7231290 at *2 (stating that the standard form language in a contract designating that a vehicle is being purchased for personal use is not dispositive of a debtor's intent). Therefore, under this broad interpretation of the loan agreement,

8

Jarreau could have acquired the Vehicle for "family" or "household" use without acquiring for "personal use" within the meaning of § 1325(a)(*).

The Court finds Jarreau's testimony that he did not acquire the Vehicle for his personal use to be credible and convincing.[7]  His testimony is supported by his de minimis use of the Vehicle since its purchase, his use of his own personal vehicle as his primary means of transportation, and his addition to the loan agreement solely for the purpose of improving his credit.  Moreover, Jarreau's testimony is also supported by the fact that Ellison previously acquired the Vehicle by herself, that she is the Vehicle's primary driver, and that she is a party to the loan agreement.  Under the facts of this case, the Court concludes that the Vehicle was not acquired for Jarreau's personal use. Therefore, § 1325(a)(*) does not apply to bar the Debtors' bifurcation of Credit Union's claim in the Plan.

## CONCLUSION

For the foregoing reasons, Credit Union's Objection is overruled.  The Debtors shall propose an amended chapter 13 plan within ten (10) days of the entry of this Order to provide for valuation of Credit Union's secured claim at the stipulated amount of $17,975.00.

**AND IT IS SO ORDERED.**

---

[7] No evidence, in the form of testimony of the loan officer or otherwise, was presented by Credit Union to contradict Jarreau's testimony.

9